# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE STATE OF OKLAHOMA, THE STATE OF KANSAS, THE STATE OF NORTH DAKOTA, DOMESTIC ENERGY PRODUCERS ALLIANCE, and OKLAHOMA FARM BUREAU, INC., <br><br> Plaintiffs, <br><br> and <br><br> THE STATE OF NEBRASKA <br><br> Proposed Intervenor Plaintiff, <br><br> v. <br><br> DEPARTMENT OF THE INTERIOR, SALLY JEWELL, FISH & WILDLIFE SERVICE, DANIEL M. ASHE, GARY FRAZER, and DIXIE PORTER, <br><br> Defendants. | No. 4:14-cv-00123-JHP-PJC |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO TRANSFER VENUE

## Table of Contents

INTRODUCTION....................................................................................................................1

BACKGROUND .................................................................................................................1

ARGUMENT .......................................................................................................................5

I.    FWS Must Demonstrate That the Tenth Circuit Criteria on Transfer "Strongly" Favor Transfer. ..................................................................................5

II.   The Government Has Not Met Its Burden to Demonstrate That Transfer is Warranted. ........................................................................................................6

III.  "Interest of Justice" Is Not an Alternative Basis for Transfer........................13

IV.  Adjudication of Plaintiffs' Claims in This Court is Not Contrary to Any Interest of Justice. ............................................................................................15

V.   The D.C. District Court is Not a Superior Forum for Resolution of Plaintiffs' Claims. ..............................................................................................19

CONCLUSION ..................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BSB Leasing, Inc. v. Reservation Ctr., Inc.*,
No. 08-CV-02295LTB, 2008 WL 5411478 (D. Colo. Dec. 29, 2008)....................................6

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
928 F.2d 1509 (10th Cir. 1991) .............................................................5, 7, 13, 14

*In re Endangered Species Act Section 4 Deadline Litig.*,
270 F.R.D. 1 (D.D.C. 2010).................................................................................16

*In re Endangered Species Act Section 4 Deadline Litig.*,
277 F.R.D. 1 (D.D.C. 2011)...............................................................16, 17, 18, 21

In re *Endangered Species Act Section 4 Deadline Litig. MDL No. 2165*,
704 F.3d 972 (D.C. Cir. 2013)............................................................................18

*NACS v. Bd. of Governors of Fed'l Reserve Sys.*,
No. 13-5270, 2014 WL 1099633 (D.C. Cir. Mar. 21, 2014) ..................................13

*Nat'l Ass'n of Home Builders v. U.S. Fish and Wildlife Service*,
No. 12-cv-2013 (EGS), 2014 WL 1278630 (D.D.C. Mar. 31, 2014) ....................18

*Pullen v. Walgreen Co.*,
No. 08-CV-719-GKF-PJC, 2009 WL 311309 (N.D. Okla. Feb. 9, 2009).........................6, 7, 8

*Samsung Elecs. Co. v. Rambus, Inc.*,
386 F. Supp. 2d 708 (E.D. Va. 2005) ..................................................................15

*Scheidt v. Klein*,
956 F.2d 963 (10th Cir. 1992) ..............................................................................7

*Tex. E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*,
579 F.2d 561 (10th Cir. 1978) ..............................................................................7

*Tex. Gulf Sulphur Co. v. Ritter*,
371 F.2d 145 (10th Cir. 1967) ...........................................................................5, 7

*Titsworth v. City of Muskogee*,
No. 07-CV-0576-CVE-SAJ, 2008 WL 112032 (N.D. Okla. Jan. 9, 2008) .........................6, 7

**Statutes**

16 U.S.C. § 1533(b)(1)(A).....................................................................................4

16 U.S.C. § 1533(b)(3) ..................................................................................1

16 U.S.C. § 1533(h) ......................................................................................4

28 U.S.C. § 1391 ...........................................................................................1

28 U.S.C. § 1404 ......................................................................................1, 14

28 U.S.C. § 1404(a) ....................................................................6, 13, 14, 15

Administrative Procedure Act......................................................................13

APA.........................................................................................11, 17, 18, 19

Endangered Species Act ..............................................................................13

Endangered Species Act ................................................................................1

ESA ....................................................................................................... *passim*

ESA, the Administrative Procedure Act .........................................................3

**Other Authorities**

50 C.F.R. § 424.10 and § 424.14(b)(3) and Section 4 ................................10

50 C.F.R. § 424.14(b) ...................................................................................2

61 Fed. Reg. 24,722, 24,726 (May 16, 1996) .............................................11

http://www.biologicaldiversity.org/about/staff/index.html#kieran (last accessed
    May 9, 2014) ............................................................................................9

http://www.biologicaldiversity.org/publications/reports/CBD_2012_form_990_85
    -0420285.pdf (last accessed May 9, 2014) ..............................................8

http://www.wildearthguardians.org/site/DocServer/2012_990_Return_Public.pdf?
    docID=8862 (last accessed May 9, 2014)................................................9

http://www.wildearthguardians.org/site/PageServer?pagename=about_staff#John
    (last accessed May 9, 2014) ....................................................................9

Memorandum in Support of Defendants' Motion to Transfer Venue, Dkt. 33 .................... *passim*

Order Denying Safari Club Intervention, ECF No. 54 ................................20

**INTRODUCTION**

Plaintiffs the State of Oklahoma, the State of Kansas, the State of North Dakota (collectively, the "States"), and Domestic Energy Producers Alliance ("DEPA") and Oklahoma Farm Bureau, Inc. ("Farm Bureau", and collectively with DEPA, the "Oklahoma Associations") oppose Fish & Wildlife Service's ("FWS's") Motion to Transfer Venue. Because FWS cannot meet its burden to demonstrate that circumstances "strongly" favor transfer, controlling precedent dictates that these States' and the Oklahoma Associations' choice of forum should not be disturbed. The Tenth Circuit has identified nine factors that must be considered when a defendant seeks to disturb a plaintiff's proper choice of venue[1] under 28 U.S.C. § 1404. These factors do not support transferring this action, and FWS's platitude, the "interest of justice," amounts to no more than a preference for another court and its case law, *i.e.*, precisely the forum-shopping that courts in this Circuit seek to prevent.

**BACKGROUND**

Three mid-western states[2] and two Oklahoma Associations have brought this action in the Northern District of Oklahoma against FWS concerning six species that are the subjects of Endangered Species Act ("ESA") listing processes (the "State Species"). At various times, acting pursuant to statutory mandates and FWS's regulations, FWS designated each of these species as a "candidate species." Thereafter, the ESA and FWS's implementing regulations required FWS to reevaluate each of these candidate species annually to determine whether the species should be deemed (i) not warranted for listing, (ii) warranted and subject to proposed listing, or (iii) "warranted but precluded" due to its comparatively low priority. *See* 16 U.S.C. §

---

[1] FWS does not dispute that venue is proper in the Northern District of Oklahoma. *See* 28 U.S.C. § 1391.

[2] Additionally, the State of Nebraska has moved to intervene in this action as a plaintiff.

1533(b)(3); 50 C.F.R. § 424.14(b). These directives are not in dispute. This case concerns the timing of and analysis given to FWS's decision to move the State Species from the candidate species category by either proposing to list them as threatened or endangered under the ESA or determining that listing is not warranted.

The timing and possible outcomes of FWS's analysis of each species are dictated by judicial settlements. Faced with an onslaught of "deadline" litigation from special interest groups alleging FWS had failed to meet certain deadlines imposed by the ESA, FWS struck a deal. Twelve actions were consolidated in the District Court for the District of Columbia ("D.C. District Court") by the Judicial Panel on Multi-District Litigation (the "Deadline MDL"). FWS then entered into two settlement agreements with the special interest groups bringing those twelve actions, the Center for Biological Diversity ("CBD") and WildEarth Guardians ("WEG"). *See* CBD Stipulated Settlement Agreement, ECF No. 42-1 (July 12, 2011); WEG Stipulated Settlement Agreement, ECF No. 31-1 (May 10, 2011) (the "Settlement Agreements"). Whereas the twelve consolidated actions concerned a limited number of species, the Settlement Agreements mushroomed to include FWS commitments to conduct novel "up or out" species status reviews for hundreds of species on the candidate list, by which FWS would either list those species or determine that listing is not warranted. FWS agreed that by 2018 none of the species subject to the Settlement Agreements would remain on the candidate list.

In compliance with the Settlement Agreements, FWS has already moved two of the State Species, the Rabbitsfoot Mussel and the Lesser Prairie-Chicken, from the candidate species classification and listed them as "threatened" under the ESA. In both cases, FWS, handcuffed by its agreements with special interest litigants, did *not* consider retaining the species as candidate species. Rather, FWS proposed listing rules and ultimately decided that these species should be

listed.   In deciding to move the Rabbitsfoot Mussel and Lesser Prairie-Chicken from the candidate species classification, FWS made no effort to account for conservation measures undertaken by, among others, plaintiffs Oklahoma, Kansas, and North Dakota, or by Oklahoma's farmers, or by DEPA members.  Similarly, FWS proposed to list the Northern Long-Eared Bat as "endangered," again without consideration of retaining its candidate species status.

For the remaining three State Species in this litigation, FWS has committed to making a decision without considering one of the three possible status review outcomes prescribed by statute and FWS's own regulations, i.e., keeping these species as candidate species.[3]  FWS has agreed to a schedule under which, by negotiated deadlines, it must either list each species or determine that listing is not warranted, regardless of whether continuing to classify the species as a candidate is appropriate under the ESA and FWS's regulations.  Thus, even if scientific data and conservation measures undertaken by the Plaintiff States and commitments of members of the Plaintiff Oklahoma Associations would ordinarily lead FWS to retain the candidate species classification for one or more of the State Species, each of these species will be subject to a premature "up or out" decision from FWS and, in all probability, these species will be listed under the ESA.[4]

Plaintiffs brought this action against FWS to remedy six violations of the ESA, the Administrative Procedure Act ("APA"), and the Constitution caused by the FWS's actions and intentions regarding the State Species:

  1)  FWS's omission of the statutory alternative of retaining these species within the

---

[3] FWS has agreed to remove the Greater Sage-Grouse from the candidate species classification by 2015, and to remove the Sprague's Pipit and the Arkansas Darter by 2016.

[4] The likelihood of FWS deciding that a listing is "not warranted" is relatively low since, in each instance, FWS has previously determined that listing the species is warranted but precluded by its low priority in comparison with other species under consideration.

candidate species classification;

2) FWS's premature decision to move the six species from the candidate species classification contrary to its obligation to make this determination "solely on the basis of the best scientific and commercial data available . . . after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State . . . to protect such species [including] conservation practices . . . ." 16 U.S.C. § 1533(b)(1)(A);

3) FWS's failure to ensure well-documented, science-driven decisions under guidelines for moving species from the candidate species category, 16 U.S.C. § 1533(h);

4) FWS's failure to abide by regulations that require FWS to consider retaining a species as a candidate species during each annual review;

5) FWS's violation of due process for its imposition of settlement terms on the States and Oklahoma Associations who are not party to the Settlement Agreements; and

6) FWS's violation of Article II of the Constitution in its abdication of executive duty by transferring, via the Settlement Agreements, its ESA-related decision-making for the species at issue to special interest litigants.

FWS has moved the Court to transfer this case to the United States District Court for the District of Columbia ("D.C. District Court"). FWS argues that the "interest of justice" demands that this case be transferred to the venue where FWS entered into its Settlement Agreements in the Deadline MDL. In addition, FWS has petitioned the Judicial Panel on Multi-District Litigation ("Panel") to treat this case as a "tag-along" case for consolidation with the Deadline

MDL. Consistent with its procedural rules, the clerk's office for the Panel issued a Conditional Notice of Transfer, and Plaintiffs have responded with their Notice of Objection. Pursuant to the direction of the clerk's office, Plaintiffs will shortly file their brief with the Panel, explaining why it should not consolidate this case for pre-trial proceedings with the now-settled special interest plaintiffs' cases in Washington, D.C.

## ARGUMENT

Precedent in this Circuit requires a movant seeking to disturb a plaintiff's choice of venue to show that the criteria for transfer "strongly" favor transfer of the case. To prevail FWS must show, guided by nine specific factors, that the States' and Oklahoma Associations' choice of forum should not be respected. Measured against these controlling criteria, FWS has no basis to transfer this case, much less the "strong" showing required for transfer. Similarly, FWS's contentions that this Court is not well-qualified to adjudicate Plaintiffs' claims, and that it would be unable to enforce a judgment for Plaintiffs, have no merit. FWS's effort to transfer this case to Washington, D.C. is transparent forum-shopping and should be denied.

**I.   FWS MUST DEMONSTRATE THAT THE TENTH CIRCUIT CRITERIA ON TRANSFER "STRONGLY" FAVOR TRANSFER.**

The Tenth Circuit imposes a demanding burden on those who seek to move a case to a court of their preference. "The burden of establishing that the suit should be transferred is upon the movant and unless the evidence and the circumstances of the case are strongly in favor of the transfer the plaintiff's choice of forum should not be disturbed." *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515-16 (10th Cir. 1991).

Courts in this district strictly apply this limitation. Even in an instance where "convenience factors . . . indeed support[ed]" transfer, Judge Eagan explained that, absent "a

*strong* justification meriting transfer," a transfer motion should be denied. *Titsworth v. City of Muskogee*, No. 07-CV-0576-CVE-SAJ, 2008 WL 112032, at *3-4 (N.D. Okla. Jan. 9, 2008).[5] More recently, Judge Frizzell affirmed the analysis provided in *Titsworth*, reasoning that, "[u]nless the balancing of these [venue] factors strongly favors transfer, the plaintiff's choice of forum should rarely be disturbed" and "[p]laintiff's choice is [ ] given *considerable* weight." *Pullen v. Walgreen Co.*, No. 08-CV-719-GKF-PJC, 2009 WL 311309, at *1 (N.D. Okla. Feb. 9, 2009) (emphasis added) (citations and internal quotation marks omitted). *See also BSB Leasing, Inc. v. Reservation Ctr., Inc.*, No. 08-CV-02295LTB, 2008 WL 5411478, at *3 (D. Colo. Dec. 29, 2008) ("'Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue.'") (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)).

Here, FWS has little support for its motion to transfer, much less the requisite "strong" justification required for transfer under 28 U.S.C. § 1404(a). The Tenth Circuit's factors support keeping the case in the Northern District of Oklahoma. Indeed, other than FWS's preference for a jurisdiction with what FWS perceives as precedent favorable to its defense against Plaintiffs' claims, FWS offers no basis to transfer this case.

## II.    THE GOVERNMENT HAS NOT MET ITS BURDEN TO DEMONSTRATE THAT TRANSFER IS WARRANTED.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and

---

[5] In *Titsworth*, the Court denied a motion to transfer a case from the Northern District of Oklahoma to the Western District, even though the witnesses, records, and acts giving rise to action were located in the other district. 2008 WL 112032, at *1. Noting that witnesses were not unable to travel to the Northern District, Judge Eagan concluded that convenience weighed "slightly in [movant's] favor" but nonetheless could not overcome movant's "burden of demonstrating the need for transfer." *Id.* at *3-4. Thus, even with convenience weighing in favor of transfer, this Court declined to require plaintiff to litigate at a location no more than 50 miles from its chosen venue.

fairness.'" *Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). With one exception, each of the nine *Chrysler* factors relates directly to convenience and efficiency. The exception is for enforceability of a potential judgment. The goal of all of the factors is to make litigation "easy, expeditious and economical." *Tex. Gulf Sulphur*, 371 F.2d at 147. None of these factors favor transferring this case.

i. ***Plaintiffs' choice of forum***:  Tenth Circuit law is well-settled:  "plaintiff's choice of forum should rarely be disturbed." *Scheidt*, 956 F.2d at 965; *see also Tex. Gulf Sulphur*, 371 F.2d at 147; *Tex. E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.*, 579 F.2d 561, 567 (10th Cir. 1978) (plaintiff's choice of forum receives "considerable weight"). Indeed, FWS's claim that "minimal consideration" is given to Plaintiff's choice of forum, Memorandum in Support of Defendants' Motion to Transfer Venue, Dkt. 33 ("FWS Br.") at 20, finds no support in the law of this Circuit. As *Titsworth* and *Pullen* demonstrate, the other factors must "strongly" outweigh the Court's deference to Plaintiffs' choice of this forum for transfer to be proper.

ii. ***The accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses***:  FWS ignores the convenience of witnesses who would testify concerning:  (i) conservation measures undertaken by the States and regional farms and oil and gas companies, (ii) the impact of listing decisions on State programs and private undertakings; (iii) the States', the Farm Bureau's, and DEPA members' participation in FWS-approved candidate conservation agreements with assurances ("CCAAs"),[6] and (iv)

---

[6] Negotiations concerning the CCAAs at issue in this case occurred largely in Denver, Colorado.

other evidence bearing on the species that are the subject of this litigation.[7]   Each of these

witness groups is undeniably closer to the Northern District of Oklahoma than to the D.C.

District Court.

FWS's only real convenience argument is that the FWS officials and their counsel who

negotiated the Settlement Agreements approved in the Deadline MDL reside in or near

Washington, D.C.   FWS Br. at 14, 22.   FWS asserts that "to the extent that witnesses or the

production of factual information would be required in this case, those witnesses and that

information are located in or near the District of Columbia."   *Id*. at 22.   Yet, FWS also notes:

"this case likely will be resolved on the basis of the administrative record and without trial."   *Id.*

at 21.   As explained below, Plaintiffs reject the notion that this action "grows directly out of

multi-district litigation" in the District of Columbia, FWS Br. at 13.   However, Plaintiffs

appreciate the FWS's recognition that FWS officials might indeed provide testimony relevant to

how the Settlement Agreements were developed outside public view, with no notice to the public

nor any opportunity for interested parties to comment on the changes to the ESA listing process

that the FWS and the special interest groups proposed to enact through those settlements.   But

FWS overlooks the fact that representatives of FWS's special interest partners in the Settlement

Agreements, CBD and WEG, may also provide relevant testimony, and they are located closer to

the Plaintiffs' chosen forum in Tulsa than to the District of Columbia.[8]   Thus, if discovery proves

---

[7] For example, conservation efforts undertaken by the Oklahoma Department of Wildlife Conservation concerning the Rabbitsfoot Mussel – which were impeded by the listing of that species – have occurred within the Northern District.   Many DEPA and Farm Bureau members reside in the Northern District.

[8] CBD's filings with the Internal Revenue Service identify the organization's address as Tucson, Arizona.   *See* CBD's Form 990, *available at* http://www.biologicaldiversity.org/publications/reports/CBD_2012_form_990_85-0420285.pdf (last accessed May 9, 2014).   CBD's website indicates that Mr. Keiran Suckling, the Executive

necessary, the potential convenience of the District of Columbia for FWS's counsel is no greater than the convenience of the Northern District of Oklahoma for Plaintiffs' counsel. In short, this factor does not help FWS carry its burden.

iii. ***The cost of making the necessary proof***: FWS does not claim that this factor militates in favor of transferring the litigation to the District of Columbia. FWS does not consider the cost to Plaintiffs' counsel of traveling from North Dakota, Kansas or elsewhere in Oklahoma to Washington, D.C. and of securing accommodations there, nor does it show that the burden of such travel would be less than that of attending proceedings in Tulsa. While Department of Justice attorneys for FWS who are based in Washington, D.C. will incur costs to travel to Tulsa, those costs result from the Department's decision to assign Washington D.C. attorneys to the case, rather than using Department of Justice attorneys located in or closer to Tulsa.[9]

iv. ***Questions as to the enforceability of a judgment if one is obtained***: FWS argues that "there are major questions regarding the enforceability of any judgment that this Court would enter in favor of Plaintiffs." FWS Br. at 17. Specifically, FWS suggests that if the Court orders the relief that Plaintiffs seek, that order would "bar" FWS from carrying out its

_____

Director of CBD, works at the organization's offices in Tucson. *See* CBD's website at http://www.biologicaldiversity.org/about/staff/index.html#kieran (last accessed May 9, 2014). WEG's IRS filings identify the organization's address as Santa Fe, New Mexico. *See* Wild Earth Guardians' Form 990, *available at* http://www.wildearthguardians.org/site/DocServer/2012_990_Return_Public.pdf?docID=8862 (last accessed May 9, 2014). WEG's website says that the organization's Executive Director, Mr. John Horning, lives in New Mexico. *See* WEG's website at http://www.wildearthguardians.org/site/PageServer?pagename=about_staff#John (last accessed May 9, 2014).

[9] The Department might staff this case with lawyers from the U.S. Attorney's Office. Alternatively, the Environment & Natural Resources Division maintains an office in Denver, Colorado.

obligations under the Settlement Agreements. *Id.* Contrary to FWS's argument, there is no reason why this Court should not issue, or could not enforce, a judgment that would remedy FWS's unlawful actions in regard to the small number of species addressed in the Amended Complaint.

Essentially, Plaintiffs ask the court to (i) vacate FWS's listing of the Lesser Prairie Chicken and the Rabbitsfoot Mussel and (ii) enjoin the proposed listing of any of the State Species (*i.e.*, the Lesser Prairie-Chicken, the Rabbitsfoot Mussel, the Northern Long-Eared Bat, the Sprague's Pipit, the Arkansas Darter and the Greater Sage-Grouse) unless and until FWS shall have considered whether the species should continue to be classified as "warranted but precluded" in compliance with 50 C.F.R. § 424.10 and § 424.14(b)(3) and Section 4 of the ESA. The relief will affect only these six species within their respective ranges. This Court need not address FWS's claimed obligation under the Settlement Agreement to disregard its regulations and the ESA in making listing decisions for the hundreds of other species covered by the Settlement Agreements.

Moreover, FWS need not face any conflicting obligations under the Settlement Agreements even as to the six State Species. As FWS acknowledges, the D.C. District Court retains jurisdiction to modify the Settlement Agreements, and nothing would prevent FWS from seeking modification if it believed it could not comply with this Court's order and the Settlement Agreements with CBD and WEG.[10] Indeed, the parties to the Settlements agreed that the

---

[10] FWS has not hesitated in the past to seek modification of a court-approved settlement order in similar circumstances. When FWS published its "Final Listing Priority Guidance" in 1996, it noted that, in 1992, FWS had entered into a court-approved settlement agreement in litigation pending in the D.C. District Court that would compel the agency to act on the listing of a large number of species and, in so doing, undermine FWS's new initiative to list species in accordance with the Listing Priority Guidance. FWS "is recommending therefore, that the Department of Justice seek appropriate relief from the courts to allow the highest priority proposed species to be

agreements may not be "interpreted as, or constitute, a commitment or requirement that Defendants take any action in contravention of the ESA, the APA, or any other law or regulation, either substantive or procedural." [WEG Settlement Agreement, ¶ 20] Thus, there is no reason the D.C. District Court would not be able to modify the Settlement Agreements to accommodate a judgment by the Oklahoma court that, as to the six species at issue, FWS's promise to disregard the alternative of "warranted but precluded" was unlawful under the APA and/or ESA. This factor adds nothing to FWS's effort to carry its burden.

v. ***Relative advantages and obstacles to a fair trial***:  FWS does not suggest that it would not receive equally fair and just treatment in both District Courts.  As FWS notes, in a record review case, there are "'no perceivable advantages or obstacles to a fair trial.'"  FWS Br. at 22 (citing *Friends of Norbeck v. U.S. Forest Serv.*, No. 10–cv–2164–AP, 2010 WL 4137500, at *5 (D. Colo. Oct. 18, 2010)).  This factor does not help FWS carry its burden.

vi. ***Difficulties that may arise from congested dockets***:  FWS argues that the average time required for resolution of a case without trial is a good surrogate for the amount of time it would take a District Court to decide a record review case.  In 2013, the number is 12.3 months in the Northern District of Oklahoma and 9.8 months in the D.C. District Court.  FWS Br. at 22 (citing Administrative Office of the United States Courts, Federal Judicial Caseload Statistics, Table C-5 at 3).  However, nothing in the cited table or elsewhere in the Federal Judicial Caseload Statistics indicates how many of the cases disposed of by "court action" "before pretrial conference" were settled and dismissed with the court's approval or in how many the court decided a dispositive motion.  Only the latter might be analogized to disposition of a record

---

processed and, if appropriate, added to the lists of endangered and threatened wildlife and plants, consistent with the provisions of this listing priority guidance."  61 Fed. Reg. 24,722, 24,726 (May 16, 1996).

review case on cross-motions for summary judgment. It is FWS's burden to show how the two Districts compare in that regard.

FWS contends that the pending number of cases per judge is higher in the Northern District of Oklahoma than in the D.C. District Court (146 vs. 104). FWS implies that the dockets in the Northern District of Oklahoma are congested and that the D.C. District Court would provide a speedier resolution of Plaintiffs' claims. But, while the D.C. District Court has fewer cases assigned per judge, cases can linger on that docket much longer than in this Court. A comparison of cases older than three years on each docket is telling. In the Northern District of Oklahoma, only 4.0% of pending civil cases are more than three years old and the district has only nine such cases per judge. In the D.C. District Court, 16.5% of cases are over three years old, and the district has 26 such cases per judge. *See* U.S. District Court – Judicial Caseload Profile (attached as Ex. 1). FWS has not demonstrated that the Northern District of Oklahoma's docket is any more congested than the D.C. District Court. Transfer is not warranted on this basis.

Further, FWS's recent filings in this court do not indicate a sense of urgency on FWS's part to resolve the merits of Plaintiffs' claims. Those filings include a motion for partial stay, attempting to preclude dispositive motions, and a motion to extend by 45 days the 60-day period already allowed the FWS for its responsive pleading. By contrast, Plaintiffs are prepared to file a motion for summary judgment on their claims in the near future, which would presumably be countered by a cross-motion by FWS. These cross-motions would enable this Court to decide the merits of this action in a relatively short time-frame, were it not for the FWS's efforts to delay proceedings in this Court while it seeks to transfer the case to its favored forum.

vii. ***The possibility of the existence of questions arising in the area of conflict of laws***: FWS concedes that there is no potential for conflict of laws in this litigation. FWS Br. at 22. Plaintiffs' claims are founded on the Administrative Procedure Act (and the Endangered Species Act), which is uniformly applied in all federal judicial districts. This factor does not help FWS carry its burden.

viii. ***The advantage of having a local court determine questions of local law***: As FWS notes (FWS Br. at 22), the only law to be applied in this matter is federal law. This factor does not help FWS carry its burden.

ix. ***All other considerations of a practical nature***: FWS does not claim that other considerations of a practical nature provide any support for disturbing Plaintiffs' choice of venue.

## III. "INTEREST OF JUSTICE" IS NOT AN ALTERNATIVE BASIS FOR TRANSFER.

As the *Chrysler* factors do not favor transfer, FWS proposes an alternate standard, arguing that "the interests of justice and convenience favor transfer." FWS Br. at 13. It contends, citing decisions of District Courts in other Circuits, that the "interest of justice" is a separate component of a court's Section 1404(a) transfer analysis and may be decisive in ruling on a transfer motion. FWS erroneously suggests that "interest of justice" is different from and can trump the "convenience" criteria called out in Section 1404(a). To the contrary, on the face of the statute, "the convenience of parties and witnesses" subsumes "interest of justice."

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Here the phrase "in the interest of justice" modifies the phrase "for the convenience of the parties." *See NACS v. Bd. of Governors of Fed'l Reserve Sys.*, No. 13-5270, 2014 WL 1099633, at *10-11 (D.C. Cir. Mar. 21, 2014)

13

(noting widespread convention that a phrase set off with commas is descriptive).  Read properly,

Section 1404 instructs that a district court may transfer a case "for the convenience of parties and

witnesses" *in order to* promote the interest of justice.  Nothing in the language of this section can

be read to make "the interest of justice" a separate ground for transfer.  Had Congress wished to

establish "interest of justice" as a separate factor it would have written "For the convenience of

parties and witnesses, *or otherwise* in the interest of justice, . . ."  But it did not.

      The plain meaning of Section 1404(a) is confirmed by decisions of the Court of Appeals.

In its decisions reviewing denials of transfer motions, the Tenth Circuit has never held, or hinted,

that "interest of justice" might be an independent basis for transfer.  The Court of Appeals made

clear in *Chrysler Credit Corp. v. Country Chrysler, Inc.* that "[t]he party moving to transfer a

case pursuant to § 1404(a) bears the burden of establishing that the existing forum is

*inconvenient*."  928 F.2d at 1515 (citing *Tex. E. Transmission Corp.*, 579 F.2d at 567; *Wm. A.

Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir.1972)) (emphasis

added).  Further, the Court of Appeals enumerated the factors that a district court will consider:

> Among the factors [a district court] should consider is the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id*. at 1516 (quoting *Tex. Gulf Sulphur Co.*, 371 F.2d at 147).  An amorphous "interest of justice"

criterion, unconnected to specific considerations of convenience, is not among the relevant

factors that a court will consider in evaluating a transfer motion.

**IV.   ADJUDICATION OF PLAINTIFFS' CLAIMS IN THIS COURT IS NOT CONTRARY TO ANY INTEREST OF JUSTICE.**

Assuming arguendo that the "interest of justice" is a basis for transfer under Section 1404(a), FWS has not shown how this supposed ground would support its motion.  FWS cites as a "paramount" interest the avoidance of "inconsistent judgments" as a key element of "systemic integrity."  FWS Br. at 14.  FWS asserts that "Plaintiffs seek to obtain a judgment from this Court that is inconsistent with those rendered by the D.C. District Court and the D.C. Circuit." *Id.* at 15.

Plaintiffs do not contest the proposition that justice is not served where a party seeks in subsequent litigation to "'circumvent the force and effect of adverse rulings in prior litigation.'" *Id.* at 14 (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005).  But FWS omits a critical factor when it argues that this principle applies here:  Plaintiffs were not parties to the prior litigation.   The case FWS cites for this proposition amply demonstrates the problem with FWS's position.  There, the court denied a motion for transfer brought by Rambus after concluding that "Rambus acted as it did for one purpose:  to avoid litigating in this district, a forum that for two and a half year was among *its preferred venues* for conduct of patent litigation with DRAM manufacturers, including Samsung."  *Samsung Elecs.*, 386 F. Supp. 2d at 723 (emphasis added).   FWS has presented no authority for the more sweeping principle they seek to assert – that third parties adversely affected by litigation to which they were *not* privy must litigate any claim "related" to that litigation in the original forum.

It is undisputed that Plaintiffs are not parties to the Settlement Agreements.  Moreover, had the Plaintiffs sought to intervene in the Deadline MDL to challenge the Settlement Agreements, it is reasonable to believe that FWS would not have supported their participation in

the face of the special interest plaintiffs' opposition, and that the D.C. District Court would have denied intervention, as happened when Tejon Ranch and Safari Club International attempted to intervene. *See In re Endangered Species Act Section 4 Deadline Litig.*, 270 F.R.D. 1 (D.D.C. 2010) (denying motion of Tejon Ranch Company to intervene); *In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. 1 (D.D.C. 2011) (denying motion of Safari Club International to intervene). Indeed, Plaintiffs – and all members of the public – were denied even an opportunity to comment on the Settlement Agreements prior to the D.C. District Court's approval. Plaintiffs can hardly be accused of circumventing a ruling adverse to themselves in litigation to which they were not parties.

Implicitly conceding as much, FWS's argument for binding the Plaintiffs to the D.C. District Court appears to be a claim that this action "grows directly out of [the] multi-district litigation." FWS Br. at 13. Plaintiffs acknowledge that part of their injury is traceable to the Settlement Agreements but dispute the proposition that this fact should negate Plaintiffs' choice of venue. Effectively, FWS argues that the D.C. District Court's decision to approve the Settlement Agreements and deny intervention motions related to those Agreements gave that court exclusive familiarity with all issues related to the Settlement Agreements, including, perhaps, all of the species to be listed or denied listing as a result of the Settlement Agreements. This claim of familiarity substantially overstates the scope of the legal review the D.C. District Court purported to conduct when it approved the Settlement Agreements.

There is no risk of "inconsistent adjudications" in this Court and in the D.C. District Court. The D.C. District Court never addressed, let alone adjudicated, the legal claims that Plaintiffs raise here. The D.C. District Court's approval of the Settlement Agreements did not adjudicate the legality of a proposal to list the six species at issue in this case or, for that matter,

*any* specific species.  *See In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. at

9 ("[T]he substantive question whether or not . . . species should be listed as threatened or

endangered is not at issue in these consolidated cases or in the settlement agreements").  To

approve the Settlement Agreements the D.C. District Court was not required to reach the merits

of any of the issues raised in Plaintiffs' Amended Complaint in this action, including Plaintiffs'

(i) claim that FWS illegally amended its regulations and (ii) challenges to completed listings and

specific proposals arising from the APA rulemaking violation.[11]

     As discussed in Section II(iv) above, by their terms the Settlement Agreements may not

be "interpreted as, or constitute, a commitment or requirement that [FWS] take any action in

contravention of the ESA, the APA, or any other law or regulation, either substantive or

procedural," thus accommodating comfortably a judgment by this Court that, as implemented

without notice and comment rulemaking, the Settlement Agreements are contrary to the APA.

---

[11] The papers on the CBD Settlement Agreement demonstrate the limited nature of the D.C. District Court's review.  CBD asserted that, in reviewing the Settlement Agreement, the court's function was merely to assure itself that the terms of the agreement "are fair and adequate and are not unlawful, unreasonable, or against public policy."  CBD Mot. at 2 (citing *United States v. D.C.*, 933 F. Supp. 42, 46-47 (D.D.C. 1996).  Accordingly CBD urged that a court should not substitute its judgment for that of the parties to a settlement agreement.  Importantly, as CBD pointed out, a court does not reach the merits of the plaintiff's claims when reviewing a settlement agreement, and its duties in reviewing a settlement are "fundamentally different" from its duties when adjudicating claims on the merits.  *Id.* at 3.

In its Order, the D.C. District Court made no findings, provided no analysis, and said nothing beyond approving the Settlement Agreement as an enforceable order and dismissing CBD's actions in the Deadline MDL.  CBD's claims were dismissed with prejudice, with the Court retaining jurisdiction only to "oversee compliance with the terms of this Agreement and to resolve any motions to modify such terms."  CBD Settlement ¶ 10.

Thus, the D.C. District Court did not adjudicate the merits of CBD's or any of its co-plaintiffs' claims with respect to the listing of any species, nor did it determine that FWS's alleged failure to take timely action, whether on 90-day findings, annual consideration of candidate species, or listing decisions, was unlawful.  The court merely approved a settlement under which FWS agreed to take certain actions on a specified timetable, and reached no legal conclusions in the process.

Most importantly, even if the D.C. District Court were deemed to have adjudged the Settlement Agreements consistent with the ESA, that court plainly did not consider whether notice and comment was required under the APA in order to implement them, *i.e.*, to prospectively amend FWS regulations by writing out of them warranted-but-precluded status for hundreds of species.

Nothing in the D.C. District Court's denial of intervention to Safari Club International ("Safari Club") or its dismissal of the related action of National Association of Home Builders ("NAHB") or the D.C. Circuit's affirmance of the decision to deny Safari Club's motion to intervene (*see* In re *Endangered Species Act Section 4 Deadline Litig. MDL No. 2165*, 704 F.3d 972 (D.C. Cir. 2013), constitutes an adjudication with which Plaintiffs' claims in this action are inconsistent. The motions to intervene filed by Safari Club and NAHB's complaint presented claims entirely different from those asserted by the Plaintiffs in this Court. The D.C. District Court denied intervention to Safari Club because Safari Club alleged only that FWS failed to follow its guidelines for ranking species for listing consideration. *In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. 1. The District Court found that the guidelines are not binding on FWS. Therefore, Safari Club had not alleged FWS's violation of a "legally required procedure" under the guidelines and, accordingly, lacked "procedural standing." *Id.* at 6. Similarly, the D.C. District Court dismissed NAHB's claims for lack of standing because NAHB alleged only that, in the abstract, the Settlement Agreements might impair unspecified conservation efforts for unspecified candidate species. *Nat'l Ass'n of Home Builders v. U.S. Fish and Wildlife Service*, No. 12-cv-2013 (EGS), 2014 WL 1278630 (D.D.C. Mar. 31, 2014). In the present action, by contrast, Plaintiffs allege that FWS's decisions to list the Lesser Prairie-Chicken and Rabbitsfoot Mussel, and its promise to make an "up or out" decision on the other four State Species – without considering the option of retaining a "warranted but precluded"

classification or allowing FWS-endorsed conservation programs to provide the net conservation benefits they promise and, thereby, preclude a listing – directly violate FWS regulations (as well as the APA, the ESA, and the Constitution).

Ultimately, FWS's argument is more properly stated as a claim for the precedential authority of conclusions of law allegedly reached by the D.C. District Court or D.C. Circuit Court in the Deadline MDL or related cases. The extent to which those decisions may have precedential value on the question of Plaintiffs' standing will be for this Court to decide.[12] But that does not compel the transfer of this case. If it did, every case raising legal issues on which precedential decisions had already been issued by another court would need to be transferred to the other court for a "consistent judgment." It does a disservice to the phrase "interest of justice" to argue that third parties should be so much at the mercy of the venue choices of parties to separate litigation.

## V. THE D.C. DISTRICT COURT IS NOT A SUPERIOR FORUM FOR RESOLUTION OF PLAINTIFFS' CLAIMS.

Contrary to FWS's final argument for "transfer in the interest of justice," there is no reason to presume that Judge Sullivan's familiarity with the Settlement Agreements makes the D.C. District Court better qualified than this Court to hear Plaintiffs' claims. *See* FWS Br. at 19. FWS's claim that Judge Sullivan "is already familiar with the application of the ESA to many of the legal and factual issues in this litigation" is unpersuasive. *Id*. at 19. In the Deadline MDL,

---

[12] The judgment that Plaintiffs seek is not inconsistent with any precedential effect of the D.C. Circuit's decision in *Safari Club* (or with the D.C. District Court's subsequent adoption of the D.C. Circuit's reasoning in dismissing plaintiff's claims in *NAHB*. The Court of Appeals may have concluded in the *Safari Club* case that the ESA creates no procedural right to challenge FWS's removal of a species from the candidate list *at the time that action occurs for a given species*. But that holding would not control the issue of whether, in the Settlement Agreements, FWS bound itself prospectively to ignore en masse the provisions of its regulations that require consideration of continued candidate species status in every annual review, contrary to the ESA, the agency's rules, and the Constitution.

Judge Sullivan was called upon only to approve the settlements brokered by the FWS and the special interest groups, CBD and WEG. Judge Sullivan expressly repeated his interpretation that in approving the Settlement Agreements, he was not called upon to address the substantive validity of any listing decision that may follow therefrom. *See, e.g.*, Order Denying Safari Club Intervention, ECF No. 54 at 2-3, 10, 20. For example, Judge Sullivan has never addressed, whether in the MDL settlement process or in the related cases cited by FWS, one of Plaintiffs' central claims, *i.e.*, that FWS was required to carry out rulemaking in order to implement the Settlement Agreements. In none of the cases cited by FWS did Judge Sullivan reach the merits of any claim by a special interest plaintiff, let alone the same claims that the Plaintiff States and Oklahoma Associations now assert.

As FWS notes, both courts are presumed equally qualified to decide matters of federal law. Plaintiffs are confident that this Court will have no difficulty addressing the issues in this case, which are not even among the legal issues that were before Judge Sullivan.

## CONCLUSION

FWS's desire to centralize all litigation over all listings resulting from the Settlement Agreements is not an adequate basis on which to transfer this matter. When asked by Judge Sullivan about the effect of the Settlement Agreements on other plaintiffs' ability to file an action focused on a particular species covered by the "up or out" procedure, FWS counsel assured the court that "[t]hey're free to do that, Your Honor. There is nothing in these agreements that foreclose[s] the right of such parties to do so." Tr. of Status Conference (July 12, 2011) at 8:25-9:4. FWS counsel went on to say "the Government will ask the judge in that case where the lawsuit is filed, *which might be a different court*, not to impose a remedy that would interfere with this agreement. . . . Those plaintiffs are free to go to court." *Id*. at 9:14-18

(emphasis added). In other words, relying on FWS's representation, the D.C. District Court clearly anticipated actions – like this one – being filed in other jurisdictions and did not view the Settlement Agreements as foreclosing the right of a plaintiff to select an alternate forum. Similarly, when Judge Sullivan denied Safari Club's motion to intervene to challenge the Settlement Agreements, he noted that third parties would have the opportunity to challenge listing procedures adopted by the Settlement Agreements if and when parties were injured by a listing decision. *In re Endangered Species Act Section 4 Deadline Litig.*, 277 F.R.D. at 9 (recognizing that an opponent to Settlement Agreements may file "its own lawsuit to protect [its] interests directly" upon listing). That time has now come, and the Plaintiff States and Oklahoma Associations are entitled to deference in their choice of forum in this new, separate action.


Dated: May 9, 2014

Respectfully submitted,


_s/Gerald L. Hilsher_
Gerald L. Hilsher, OBA #4218
Robert J. Joyce, OBA #12728
Jessica John Bowman, OBA #30388
McAFEE & TAFT
A Professional Corporation
1717 S. Boulder Ave., Suite 900
Tulsa, Oklahoma 74119
(918) 587-0000 - Telephone
(918) 599-9937 - Facsimile
gerald.hilsher@mcafeetaft.com
robert.joyce@mcafeetaft.com
jessica.johnbowman@mcafeetaft.com

John C. Martin
Duane A. Siler
Susan M. Mathiascheck
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.

_s/E. Scott Pruitt_
E. Scott Pruitt
Attorney General
Patrick R. Wyrick
Solicitor General
P. Clayton Eubanks
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
patrick.wyrick@oag.ok.gov
clayton.eubanks@oag.ok.gov

ATTORNEYS FOR PLAINTIFF STATE OF
OKLAHOMA
_s/Derek Schmidt_
Derek Schmidt

Washington, D.C.  20004-2595
(202) 624-2500
(202) 628-5116
Admitted *pro hac vice*

David D. Freudenthal
CROWELL & MORING LLP
205 Storey Blvd.
Cheyenne, WY  82009
(307) 996-1401
Admitted *pro hac vice*

jmartin@crowell.com
dsiler@crowell.com
smathiascheck@crowell.com
dfreudenthal@crowell.com

ATTORNEYS FOR PLAINTIFF
DOMESTIC ENERGY PRODUCERS
ALLIANCE AND OKLAHOMA FARM
BUREAU

Attorney General
Jeffrey A. Chanay
Deputy Attorney General

OFFICE OF THE ATTORNEY GENERAL
STATE OF KANSAS
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
(785) 296-2215jeff.chanay@ag.ks.gov
(*pro hac vice* motions pending)

ATTORNEYS FOR PLAINTIFF STATE OF
KANSAS

*s/Wayne Stenehjem*
Wayne Stenehjem
Attorney General
NORTH DAKOTA OFFICE OF ATTORNEY
GENERAL
600 E. Boulevard Avenue, Dept. 125
Bismarck, ND 58505
(707) 328-2210
ndag@nd.gov
(*pro hac vice* motion pending)

ATTORNEY FOR PLAINTIFF STATE OF
NORTH DAKOTA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2014, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all ECF registrants.


      *s/* Gerald L. Hilsher
      Gerald L. Hilsher