**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| STATE OF OKLAHOMA; STATE OF KANSAS; STATE OF NORTH DAKOTA; DOMESTIC ENERGY PRODUCERS ALLIANCE; and OKLAHOMA FARM BUREAU, INC. | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:14-cv-00123-JHP-PJC |
| UNITED STATES DEPARTMENT OF THE INTERIOR; S. M. R. JEWELL, in her official capacity as Secretary of the United States Department of the Interior; UNITED STATES FISH AND WILDLIFE SERVICE; DANIEL ASHE, in his official capacity as Director, United States Fish and Wildlife Service; GARY FRAZER, in his official capacity as Assistant Director for Endangered Species, United States Fish and Wildlife Service; and DIXIE PORTER, in her official capacity as Field Supervisor of the Oklahoma Ecological Services Field Office, United States Fish and Wildlife Service, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL STAY**

Defendants United States Department of the Interior ("Interior"); S. M. R. Jewell, in her official capacity as Secretary of the Interior; the United States Fish and Wildlife Service ("FWS"); Daniel Ashe, in his official capacity as FWS's Director; Gary Frazer, in his official capacity as FWS's Assistant Director for Endangered Species; and Dixie Porter, in her official capacity as Field Supervisor of FWS's Oklahoma Ecological Services Field Office, (collectively,

1

"Defendants") respectfully submit this Reply Memorandum in support of their Motion for Partial Stay. *See* Docket ("Dkt.") 39 and 40.[1]

## INTRODUCTION

Defendants' Motion for Partial Stay is premised on the entirely commonsensical notion that this Court should be allowed to resolve the preliminary question of *where* this case should proceed – whether here or the District of Columbia – before both the Court and the parties expend additional time and resources on other pretrial proceedings. As discussed in Defendants' Opening Memorandum, *see* Dkt. 40 ("Defs.' Mem."), a temporary and narrowly-tailored stay of non-transfer-related pretrial proceedings pending the resolution of Defendants' transfer motion, which has already been fully briefed by the parties, would conserve judicial resources, would prevent prejudice to Defendants from unnecessary proceedings and possibly inconsistent rulings, and would not cause Plaintiffs any undue prejudice.

Plaintiffs disagree, primarily arguing that proceeding without a stay would impose little burden on this Court and Defendants, whereas Plaintiffs allege that they will suffer significant harm if a stay is entered. *See* Dkt. 54 ("Opposition" or "Pls.' Opp."). None of these arguments is persuasive, as discussed *infra*. Although they discount the possibility that pretrial proceedings might require the near-term attention of the Court and Defendants, Plaintiffs' own stated plans suggest otherwise. Indeed, Plaintiffs have signaled their intention to pursue an accelerated schedule with several near-term deadlines, including expedited dispositive briefing by the end of this month – all potentially before the preliminary question of transfer is even resolved.

---

[1] On May 30, 2014, the Court heard oral argument related, *inter alia*, to Defendants' Motion for Partial Stay. *See* Dkt. 59. However, it is unclear what effect, if any, this recent hearing had on the remaining briefing schedule for Defendants' Motion for Partial Stay, and so, out of a surfeit of caution, Defendants have filed this Reply Memorandum by the previously-fixed deadline. *See* LCvR 7.2(h).

Conversely, Plaintiffs' allegations of harm from the requested stay are wholly conclusory and therefore insufficient to demonstrate that a partial stay would cause them any undue prejudice, much less show prejudice that outweighs the countervailing benefits of a stay. For all these reasons, and as discussed *infra*, the Court should grant Defendants' Motion for Partial Stay.[2]

## ARGUMENT

**I.     A Partial Stay Would Conserve Judicial Resources**

Because the preliminary question of *where* this case should proceed remains unsettled, a stay of non-transfer-related pretrial proceedings pending the Court's resolution of this threshold issue would conserve judicial resources – allowing the Court to avoid entanglement in merits-related skirmishes while Defendants' transfer motion remains pending. *See, e.g.*, *In re Fusion-IO, Inc.*, 489 Fed. App'x 465, 465 (Fed.Cir. 2012) (instructing district court to decide anticipated transfer motion and motion to stay pending resolution thereof "before proceeding to any motion on the merits of the action") (citations omitted); *In re Horseshoe Entm't*, 337 F.3d 429, 433-35 (5th Cir. 2003) (ordering district court to transfer case because defendant "filed its motion to transfer timely and before it filed its answer and in our view disposition of that motion should have taken a top priority in the handling of this case"); *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30-31 (3d Cir. 1970) ("Judicial economy requires that another district court should not

---

[2] Separately, Defendants have requested that the United States Judicial Panel on Multidistrict Litigation ("Panel"), pursuant to 28 U.S.C. § 1407, transfer this case to an existing multidistrict action in the District of Columbia – *In re Endangered Species Act Section 4 Deadline Litig.*, Misc. Action No. 10-377 (EGS), MDL No. 2165 (D.D.C.) ("ESA Section 4 MDL"). *See* Dkt. 28, 37. Although the Clerk of the Panel entered a conditional transfer order, Plaintiffs have since moved to vacate the conditional transfer order. *See* Dkt. 49. On June 4, 2014, Defendants filed their response in opposition to Plaintiffs' motion to vacate. *See* Dkt. 62. The parties' briefing on Plaintiffs' motion is completed, and this motion is currently pending before the Panel. *See* Dkt. 41-2. The next available hearing session for the Panel, if a hearing is necessary, is July 31, 2014. *See* Hearing Information, at http://www.jpml.uscourts.gov/hearing-information (last visited June 5, 2014).

burden itself with the merits of the action until it is decided that a transfer should be effected . . . ."); *see also* Defs.' Mem. at 5-7.

Nothing in Plaintiffs' Opposition compels a different conclusion. Although Plaintiffs contend that "very little burden" would be imposed on the Court or Defendants in the absence of a stay, Pls.' Opp. at 6, this assertion is flatly contradicted by their own pretrial plans. If no stay is entered, there is a substantial likelihood that Plaintiffs will soon crowd the docket with filings that will consume the immediate attention (and resources) of the Court and Defendants. This is hardly idle speculation. Plaintiffs have proposed an accelerated schedule for further proceedings, *see* Dkt. 57 at 5-6, which includes several near-term deadlines. For example, Plaintiffs intend to move for leave to file a second amended complaint ("SAC") by June 20, 2014, and then – before FWS even answers the SAC or lodges an administrative record – they plan to file a "dispositive motion on certain counts" within 10 days thereafter (*i.e.*, on or before June 30). *Id.* at 5. That is, without a stay, Plaintiffs intend to move for an "expedited decision as soon as practicable on some or all of their claims," *id.* at 8, requiring both near-term responses from Defendants and likely review from this Court.[3] Such haphazard and piecemeal briefing would be avoided with the requested stay.

Equally unpersuasive are Plaintiffs' efforts to discount the risk that, if no stay is entered and this case is later transferred to the District of Columbia, this Court "will have needlessly

---

[3] The likelihood that this Court would be drawn into near-term disputes is high, since the parties disagree as to the nature, scope, and timing of such dispositive briefing. *See* Dkt. 57 at 8-9. As relevant here, Defendants believe that this case, which raises claims under the Administrative Procedure Act ("APA"), is governed by *Olenhouse v. Commodity Credit Corp.*, and therefore summary judgment briefing would be inappropriate, particularly if only for a subset of claims, and, in any event, would be premature until FWS has lodged an administrative record. 42 F.3d 1560, 1579-80 (10th Cir. 1994); *see also Robbins v. U.S. Bureau of Land Mgmt*, 438 F.3d 1074, 1085 (10th Cir. 2006). Accordingly, Defendants reserve the right to move to stay or strike any accelerated dispositive briefing, pending clarification from this Court on these issues.

expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge." *Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1360-61 (C.D.Cal. 1997); *see also Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582, 585 (D.Md. 2001) ("A stay is necessary to ensure that, in the event consolidation of all cases for pretrial litigation is ordered, there is consistent treatment of the numerous lawsuits and that judicial resources are not wasted."). Plaintiffs infer from the "relatively short expected duration" of the requested stay that it would be unlikely for the Court to devote much attention to pretrial proceedings without a stay. Pls. Opp. at 7. This might be so in an inactive case, but Plaintiffs here have made plain their intention to press for accelerated dispositive briefing in the absence of a stay, *see* Dkt. 57 at 5-6, which amplifies the risk that this Court's review will be required soon. Plaintiffs also downplay the possibility that "the time and energy that this Court would devote to any rulings it might make . . . could be for naught if this action is transferred to another court and that court modifies or vacates any of this Court's orders," *Rivers*, 980 F. Supp. at 1361, arguing that this possibility is "unlikely" because "[t]he law and rules of procedure in this Court and the D.C. District Court are the same." Pls.' Opp. at 6. But this argument misses the mark, since a transferee court may opt to vacate or modify prior rulings made by a transferor court for reasons entirely unrelated to the similarity (of lack thereof) of the applicable law and procedural rules.[4] *Cf. Rivers*, 980 F.

---

[4] In any event, Plaintiffs overstate the similarities, since *Olenhouse* is controlling in this Circuit, as discussed *supra*. As relevant here, the Tenth Circuit in *Olenhouse* explained that "[r]eviews of agency action in the district courts must be processed *as appeals,*" 42 F.3d at 1580 (emphasis in original), such that a reviewing court "should govern itself by referring to the Federal Rules of Appellate Procedure," not the Federal Rules of Civil Procedure, *id*. Hence, in this Circuit, unlike the D.C. Circuit, it is not appropriate for the parties to file cross-motions for summary judgment in APA cases. *See, e.g., Stormont-Vail Reg'l Med. Ctr. v. Sebelius*, No. 08-cv-4065-JAR, 2009 WL 2252150, at *2 (D.Kan. July 28, 2009) (denying use of cross-motions for summary judgment as inconsistent with *Olenhouse*).

Supp. at 1361 (noting, without reference to the applicable law or rules, the risk that a transferee court might vacate or modify ruling on "substantive motions").

## II.     A Partial Stay Would Not Prejudice Plaintiffs

Moreover, Plaintiffs' conclusory allegations of harm do not demonstrate that a narrowly-tailored stay would cause them any undue prejudice.  Even if the requested stay would result in delay, a stay may still be warranted based on countervailing considerations.  *See, e.g., Walker v. Merck & Co., Inc.*, No. 05-cv-360-DRH, 2005 WL 1565839, at *2 (S.D.Ill. June 22, 2005) (granting stay because, "[w]hile [p]laintiffs might well be subjected to some delay as a result of the issuance of a stay, that prejudice does not outweigh the judicial economy interests"); *Arthur-Magna, Inc. v. Del-Val Financial Corp.*, No. 90-cv-4378, 1991 WL 13725, at *1 (D.N.J. Feb. 1, 1991) (granting stay and noting that, "even if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay").

In any event, Plaintiffs fail to show that they would be prejudiced by the requested stay.  In their Opposition, Plaintiffs allege that they "must undergo expensive measures to avoid 'takes' of listed species."  Pls.' Opp. at 4 (citing Dkt. 19 at 3-5 ("The premature listing of these species has injured and will continue to injure Plaintiffs.")).  This overstates the alleged harm, however, since only two of the six species at issue are listed.  *See* 79 Fed. Reg. 19,974, 19,975-76 (Apr. 10, 2014) (lesser prairie-chicken);[5] 78 Fed. Reg. 57,076, 57,076 (Sept. 17, 2013) (rabbitsfoot

---

[5]  In addition, for one of those species – the lesser prairie-chicken – FWS has finalized a special rule, *see* 79 Fed. Reg. 20,074 (Apr. 10, 2014), which "provides that take incidental to activities conducted by a participant enrolled in, and operating in compliance with, the Lesser Prairie-Chicken Interstate Working Group's Lesser Prairie-Chicken Range-Wide Conservation Plan (rangewide plan) will not be prohibited."  *Id*. at 20,074.  FWS included this provision in the special rule to incorporate the "significant conservation planning efforts of the five State wildlife agencies within the range of the lesser prairie-chicken."  *Id*.

mussel). Hence, to the extent that Plaintiffs allege harm from the listing of certain species, this purported harm does not even apply to most of the species identified by Plaintiffs.

Further, Plaintiffs' allegations of harm – set forth in only three sentences, *see* Pls.' Opp. at 3-4 – are largely conclusory. For example, Plaintiffs do not identify any listed species for which they "must undergo expensive measures"; provide any estimate of the costs they have allegedly incurred; or describe any of the "measures" they allegedly must undertake. *See id*. at 4. Such non-specific allegations are insufficient to demonstrate any prejudice from the requested stay. *See, e.g.*, *Apache Tribe of Oklahoma v. Brown*, No. 10-cv-646-D, 2011 WL 710486, at *4 (W.D.Okla. Feb. 22, 2011) (granting stay pending appeal, in part, because plaintiffs' "allegation of prejudice from further delay is conclusory and unsupported by any factual allegations of potential prejudice" such that the court was "not persuaded that any real prejudice, other than delay itself, will occur if a stay is granted"); *Samson Res. Co. v. J. Aron & Co.*, No. 08-cv-752-TCK-SAJ, 2009 WL 1606564, at *2 (N.D.Okla. June 8, 2009) (granting discovery stay, in part, where "[p]laintiffs have not identified specific prejudice they will suffer in the event a stay is granted").

**III.   A Partial Stay Would Prevent Prejudice To Defendants**

In their Opposition, Plaintiffs repeatedly note that Defendants have already filed their answer to Plaintiffs' amended complaint, *see* Dkt. 52, suggesting that a stay is not necessary because "all that remain are any further 'amended pleadings and responses thereto [and] the lodging of an administrative record and potential motions practice related thereto.'" Pls.' Opp. at 4. However, these various tasks – answering or otherwise responding to Plaintiffs' as-yet-unfiled SAC, which will likely include "other entities" as well as new claims, *see* Dkt. 57 at 5; and compiling an expansive administrative record covering potentially multiple determinations

7

for six different species over nearly a three-year period – are hardly insubstantial. Moreover, as discussed *supra*, it is likely that additional near-term work will be required of Defendants without a stay, since Plaintiffs have proposed an accelerated schedule for further proceedings, noting that it is their intention to file a "dispositive motion on certain counts" of the SAC on or before June 30, 2014.[6] *Id.* The net result is that, in the absence of a stay, Defendants will likely be required to expend considerable time and resources in the near-term – and potentially do so before the preliminary question of transfer is even resolved. *See, e.g.*, *Christensen v. Target Corp.*, No. 2:13-cv-01136, 2014 WL 1224966, at *2 (D.Utah Mar. 24, 2014) (granting stay, in part, because, "in the absence of a stay, [movant] would suffer undue hardship by having to repeat its litigation efforts in more than one forum").

Plaintiffs' related argument – that a stay is not necessary because "there are no ongoing suits to pose the risk of conflicting rulings," Pls.' Opp. at 5 – fares no better. Although Plaintiffs attempt to cast the ESA Section 4 MDL as concluded, the opposite is true. Approval of the two separate but related settlement agreements in the ESA Section 4 MDL (collectively, the "MDL Agreements") marked only the beginning of a detailed and ongoing schedule for FWS to address the listing status of hundreds of species over the course of several years (*i.e.*, from September 9, 2011, through September 30, 2017), *see* Dkt. 33-2 ¶¶1, 2; Dkt. 33-3 ¶¶B.1-4, D.3, with ongoing "jurisdiction to oversee compliance with the terms of the [MDL Agreements] and to resolve any motions to modify such terms" reserved for the transferee judge, *see* Dkt. 33-2 ¶28; Dkt. 33-3 ¶D.10. FWS is currently nearing the mid-point of this multi-year schedule. However, Plaintiffs ask this Court to vacate substantial work that has already been completed in compliance with the

---

[6] Plaintiffs also propose that Defendants be required to file any motion to dismiss claims in the SAC by this expedited deadline, *id.* at 5, which Defendants believe would be both unreasonable and infeasible.

MDL Agreements and to modify various court-ordered commitments that are still pending, *see* Dkt. 25 at 48-49 – even though this relief would directly conflict with the transferee judge's prior decisions and retained jurisdiction.  Stated differently, the risk of an inconsistent ruling is not merely a possible consequence of rushing to dispositive briefing in this case – it is precisely the result sought by Plaintiffs.  This risk also weighs in favor of a stay until the appropriate venue is resolved.  *See, e.g.*, *Bennett v. Oraganon USA Inc*., No. 13-cv-03606-JST, 2013 WL 5127993, at *2 (N.D.Cal. Sept. 13, 2013) (granting stay where defendants would "face the risk of unnecessary proceedings and inconsistent rulings on recurring questions of law and fact if the case [were] not stayed"); *Asmann v. Dairy Farmers of Am., Inc*., No. 12-1060-KHV/DJW, 2012 WL 1136865, at *4 (D.Kan. Apr. 4, 2012) (granting stay because proceeding with the case "may pose a risk of inconsistent rulings").

### IV.   Plaintiffs' Additional Factors Are Inapposite

Plaintiffs also fault FWS for failing to address two additional factors – "the interests of persons not parties to the civil action" and "the public interest."  Pls.' Opp. at 3, 7 (citing *Samson Res. Co.*, 2009 WL 1606564, at *1).  Neither factor, however, is relevant here.  As Defendants explained in their Opening Memorandum, *see* Dkt. 40 n. 2, the specific context of a requested stay often determines the factors that may be considered.  *See, e.g., Covington Specialty Ins. Co. v. Charles A. Shadid, L.L.C.*, No. 13-cv-0183-F, 2013 WL 3923764, at *3 (W.D.Okla. July 29, 2013) (describing factors applicable to motion to stay a federal action while a parallel state court action is pending); *Core Labs., LP v. Spectrum Tracer Servs., L.L.C.*, No. 11-cv-1157-M, 2013 WL 501347, at *2 (W.D.Okla. Feb. 8, 2013) (describing "specific standards" applicable to motion to stay a patent infringement action pending reexamination proceedings).

In their Opposition, Plaintiffs recite the specific factors considered "in deciding whether to grant a stay of *discovery*." *Samson Res. Co.*, 2009 WL 1606564, at *1 (emphasis added); *see also* Pls.' Opp. at 3. Since Defendants do not specifically seek a stay of discovery, these factors do not apply here. Rather, the factors set forth in *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), appear to be controlling. *See Kendall State Bank v. Fleming*, No. 12-cv-2134-JWL-DJW, 2012 WL 3143866, at *2 (D.Kan. Aug. 1, 2012) (applying *Landis* factors because more specific factors were "not applicable"); *cf. Wishon v. Monsanto Co.*, No. 13-cv-770-M, 2013 WL 5596319, at *1 (W.D.Okla. Oct. 11, 2013) ("In determining whether or not to exercise its discretion to stay a case pending a decision by the [Panel], district courts typically consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated.") (citations omitted). In any event, even if the discovery-related factors in *Samson* were applicable, they are merely permissive, 2009 WL 1606564, at *1 (identifying "[f]actors that courts *may* consider") (emphasis added)), so a reviewing court is not required to address each factor. *Id*. at *2 (ordering discovery stay without specifically addressing either the "interests of persons not parties to the civil action" or "public interest"); *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D.Colo. Mar. 30, 2006) (ordering partial discovery stay; noting "there is no evidence . . . that third parties or the public interest are or may become involved in this case").

## CONCLUSION

For all the reasons set forth *supra*, Defendants' Motion for Partial Stay should be granted.

Dated:  June 5, 2014                               Respectfully submitted,

                                                SAM HIRSCH
Acting Assistant Attorney General
SETH M. BARSKY
Section Chief
KRISTEN L. GUSTAFSON
Assistant Section Chief
CLIFFORD E. STEVENS, JR.
Trial Attorney


*/s/ H. Hubert Yang*
H. HUBERT YANG
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0210
Fax: (202) 305-0275
E-mail: clifford.stevens@usdoj.gov
E-mail: hubert.yang@usdoj.gov

Of Counsel:

JOAN GOLDFARB
Attorney-Adviser
BENJAMIN JESUP
Attorney-Adviser
United States Department of the Interior
Office of the Solicitor
Branch of Fish & Wildlife
Washington, DC Headquarters

*Attorneys for Defendants*

11

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2014, I electronically filed the foregoing Reply Memorandum In Support Of Defendants' Motion For Partial Stay with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record.

/s/ H. Hubert Yang
H. HUBERT YANG
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0209
Fax: (202) 305-0275
E-mail: hubert.yang@usdoj.gov

*Attorney for Defendants*